707 So.2d 1048 (1998)
Frank L. CARTER and Carter Paper Company, Inc.
v.
Martin A. SCHOTT, The ABC Insurance Company, Joseph P. Brantley, IV, Beychok, Freeman & Brantley, A Professional Law Corporation, The DEF Insurance Company, Claude F. Reynaud, Jr., Breazeale, Sachse & Wilson, L.L.P., and The GHI Insurance Company.
No. 96 CA 2722.
Court of Appeal of Louisiana, First Circuit.
February 20, 1998.
Jacques F. Bezou, Covington, for Plaintiffs-Appellants, Frank L. Carter and Carter Paper Co., Inc.
Vincent P. Fornias, Baton Rouge, for Defendants-Appellees, Breazeale, Sachse & Wilson, L.L.P. and Claude F. Reynaud, Jr.
Before LOTTINGER, C.J., and SHORTESS and FOGG, JJ.
LOTTINGER, Chief Judge.
Plaintiffs, Frank L. Carter and Carter Paper Company, Inc., appeal the trial court judgment dismissing their legal malpractice suit as to all parties on the peremptory exception raising the objection of prescription and finding the peremptory exception raising the objection of no cause of action moot based on the granting of the objection of prescription.
The following facts are gleaned from the record, which contains only pleadings and the transcript of the trial court's written reasons. In early October, 1993,[1] plaintiffs retained attorney Joseph P. Brantley, IV to prosecute anti-trust claims against a competitor. On October 18, Brantley advised Mr. Carter that his firm did not handle anti-trust cases. Brantley put Mr. Carter in touch with attorney Claude F. Reynaud, Jr., and the three met on October 26. From late October, 1993, to January 5, 1994, investigation and work continued in the pursuit of this lawsuit. However, on January 5, 1994, after faxing a proposed contingent fee contract to Mr. Carter *1049 for his approval, Reynaud later in the day advised Mr. Carter that there existed a conflict of interest within the law firm, and he would not be able to represent him. On January 12, 1994, in a letter from Brantley to Mr. Carter, Brantley expressed grave reservations as to whether the anti-trust claims were still viable and cautioned that January 15 was critical. The letter erroneously referred to January 15 as a critical date, where in truth and in fact January 11, 1990, was the date Carter Paper Company, Inc. ceased doing business, and thus was the critical date.
Suit on the anti-trust claims was filed by other counsel in federal district court on February 18, 1994. This suit was subsequently dismissed on June 2, 1995, because the claims had prescribed.
In dismissing the case sub judice on prescription, the trial court, noted that in Lirette v. Roe, 93-0441 (La.App. 4 Cir.1994), 631 So.2d 503, the court held that "prescription on a legal malpractice case for failure to file a suit timely begins to run when the exception of prescription is filed in the court rather than later when the exception is sustained." The suit sub judice was filed on May 3, 1996, whereas the motion to dismiss in federal court was filed on December 5, 1994, and orally argued on April 19, 1995. The trial court imputed the knowledge of plaintiffs' counsel in the federal proceeding as to the filings therein to plaintiffs but held that "[e]ven if prescription didn't commence to run on the knowledge theory as of December 5, '94, the pleadings reflect that it was orally argued on April 19, '95. So no question, Carter and the Carter Company had knowledge of that date. And suit was not filed ... until May 3, '96. So I'm sure one year has elapsed and the claim has prescribed."

ASSIGNMENTS OF ERROR
The essence of plaintiffs' argument is that their cause of action against their attorneys did not mature until the date of the final judgment dismissing their anti-trust claims. They argue that to begin prescription at any other time prior thereto would force plaintiffs to race to the courthouse to file premature suits. In support thereof they argue that if plaintiffs were forced to file suit for malpractice each time a prescription plea was filed, the courts would be flooded with malpractice lawsuits. In support of the argument that the malpractice claims did not mature until final judgment, plaintiffs cite Reeder v. North, 96-165 (La.App. 5 Cir. 11/14/96), 683 So.2d 912 and Jure v. Barker, 619 So.2d 717 (La.App. 4th Cir.1993).
Reeder was reversed and Jure was explicitly overruled in Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291. The supreme court held that La. R.S. 9:5605 was clear and unambiguous and that the lower courts were wrong in holding prescription in a legal malpractice action does not begin to run until the judgment giving rise to the legal malpractice claim becomes definitive.
The supreme court explained in Harvey v. Dixie Graphics, Inc., 593 So.2d 351 (La. 1992), and Braud v. New England Insurance Company, 576 So.2d 466 (La.1991), that the cause of action for malpractice arises when any appreciable and actual harm flows from the negligent conduct. In Braud, the court found this occurred when a pleading was filed attacking the validity of a judgment in Braud's favor because Braud was compelled to incur attorney fees and legal costs from that point forward. In Harvey, an action arising from an accountant's malpractice, the court noted Braud did not set a fixed point at which damages were deemed to be certain. The court found prescription on Harvey's malpractice claim began to run when the IRS informed him of his accountant's alleged negligence, even before any formal proceedings had been instituted by the IRS, because he began to incur accountant's and attorney fees to investigate the alleged deficiencies at that point.
In this case, plaintiffs began to incur legal expenses to defend the motion to dismiss when it was filed in federal court on December 5, 1994, and their cause of action arose at that point. Thus, the trial court was correct in finding their malpractice action filed in May of 1996 was untimely.

FIDUCIARY DUTY
In the alternative, plaintiffs claim that defendant attorneys breached the fiduciary duty to their clients and thus a ten-year *1050 prescriptive period applies. In their brief plaintiff's argue:
The facts in this case show that defendants' behavior in leading Carter to believe that they were pursuing his claims, then abandoning him at a time when it was too late to obtain another attorney to file suit, coupled with the fact that they were the attorneys for the competitor he intended to sue, exceeded mere negligence, and rose to a breach of trust.
We do not argue with the assertion made. However, we note that in every situation where an attorney has allowed a claim to prescribe, plaintiffs in the instant case would have us apply the ten year prescriptive rule.
Further, this court in Allen v. Carollo, 95-1840 (La.App. 1 Cir. 4/4/96), 674 So.2d 283, 288, held: "[t]he issue squarely presented to this court is whether LSA-R.S. 9:5605 has legislatively abrogated the ten-year prescriptive period for breach of contract in legal malpractice claims. We hold that it has." La. R.S. 9:5605 applies to claims of legal malpractice "whether based upon tort, or breach of contract, or otherwise." Therefore, we hold that R.S. 9:5605 applies in the context of a legal malpractice claim to a breach of a fiduciary duty.
Therefore, for the above and foregoing reasons, we affirm the judgment of the trial court at plaintiffs-appellants' costs.
AFFIRMED.
NOTES
[1] The date of October, 1994, is mentioned in the petition, but this is an obvious error.