760 So.2d 681 (2000)
SHREVEPORT CREDIT RECOVERY, INC., Plaintiff-appellee,
v.
Shelton R. MODELIST, Defendant-appellant,
S. Lynn Walker; Mills, Timmons & Third party defendants-appellees Flowers, P.C.; and G. Warren Thornell, Third party Defendants-appellees.
No. 33,369-CA.
Court of Appeal of Louisiana, Second Circuit.
May 15, 2000.
Opinion on Rehearing June 15, 2000.
*682 Steven I. Young, Counsel for Appellant.
Cook, Yancey, King & Galloway by Robert Kennedy, Jr., Shreveoprt, Counsel for Appellees.
Before BROWN, WILLIAMS and CARAWAY, JJ.
CARAWAY, J.
In this action involving legal malpractice and overbilling, the former client contests the trial court's sustaining of defendants/lawyers' exceptions of prescription and peremption. Finding correct the trial court's ruling as to the client's legal malpractice claims, we affirm in part but remand to the trial court for further proceedings the client's claim for overbilling.

Facts
Modelist originally retained Sandra Lynn Walker, an attorney with Mills, Timmons & Flowers ("M,T & F"), in April 1991 to obtain a right of passage to a piece of property he owned in Caddo Parish. After unsuccessfully attempting to negotiate a right of passage from the adjoining landowners, on December 17, 1992, Walker filed a petition for declaratory judgment (the "Petition") against several individuals. *683 The defense attorney pointed out to Walker several problems with the Petition including the failure to join an indispensable party. Since Modelist only claimed a one-half ownership interest in the real property, the defense asserted that the other co-owner was indispensable.
On February 10, 1993, the defendants filed exceptions of failure to join an indispensable party and no cause of action. A hearing on the pending exceptions was held on June 21, 1993 which Modelist attended. Following the hearing, Walker met with Modelist and explained that the Petition needed to be amended to add the co-owner of the real property as a party but Modelist refused to authorize such amendment. On March 9, 1994, the trial court sustained the exceptions in a written opinion.
In a letter dated March 11, 1994, Walker forwarded a copy of the trial court's opinion to Modelist and outlined his options including that the Petition needed to be amended quickly to prevent dismissal of the suit, or, alternatively, the trial court's opinion could be immediately appealed. Walker also advised Modelist in this letter that she would be withdrawing as his counsel of record. Walker testified that the cause for withdrawal of representation was Modelist's non-payment of legal fees and his lack of communication.
On March 16, 1994, Walker sent Modelist a copy of the proposed judgment granting the exceptions with a letter telling him that once the judgment was signed by the trial court, he would have only fifteen days to amend the Petition. On March 23, 1994, Walker mailed Modelist a certified copy of the judgment on exceptions and admonished him that he had until April 5, 1994 to amend the Petition. Walker's motion and the order allowing her and M,T & F to withdraw as Modelist's counsel were filed on March 29, 1994.
Despite Walker's withdrawal of representation, Warren Thornell, another attorney at M,T & F, consulted with Modelist and took over Modelist's representation. In April 1994, Thornell spoke with Frederic Miller, the defense counsel, and the two attorneys agreed to have their respective clients reconsider the settlement proposal proposed earlier in 1993. Miller also agreed not to file a motion to dismiss Modelist's suit until the parties had time to consider the proposal. Thornell spoke with Modelist and recommended that they pursue negotiation rather than litigation. Modelist agreed and instructed Thornell to attempt to negotiate a servitude agreement. By letter dated May 5, 1994, Thornell presented a counter-proposal to Miller on behalf of Modelist. Negotiations continued for over a year and in October 1995, Modelist obtained the right of passage in an Act of Predial Servitude.
On March 6, 1996, Shreveport Credit Recovery, Inc. ("SCR") filed suit against Modelist on a promissory note dated August 4, 1994 originally signed by Modelist for M,T & F and assigned by M,T & F to SCR. On February 12, 1997, Modelist filed an amended answer and third party demand/reconventional demand. Walker, George H. Mills, Jr. ("Mills") and M,T & F were made defendants in the third party demand. In the third party demand, Modelist asserted that the trial court's March 9, 1994 rulings sustaining the exceptions of failure to join an indispensable third party and no cause of action in his suit to obtain a right of passage were the result of legal malpractice on the part of Walker, Mills and M,T & F and that Walker and M,T & F submitted fraudulent charges to Modelist for work not done or previously billed.
On March 4, 1999, Modelist filed an amended third party demand making Walker, Mills, Thornell and M,T & F defendants. This amended third party demand asserted that Walker withdrew from representation of Modelist without protecting his interests or giving him adequate notice, Walker and Thornell failed to amend the Petition to correct the defects challenged by the exceptions sustained by the trial court, and Thornell, in April 1994, *684 did not inform Modelist of the failure to amend the Petition to correct the defects and the effect of that failure on the litigation. On March 22, 1999, Modelist dismissed all claims against Mills.
Walker, Thornell and M,T & F filed exceptions of prescription and peremption. On May 24, 1999, a hearing was conducted with regard to the exceptions at which time Walker, Thornell and Modelist presented testimony. After considering the law and the evidence, the trial court sustained the exceptions, dismissed Modelist's claims and certified the judgment as a partial final judgment.

Discussion
Prescription on claims for legal malpractice is governed exclusively by La. R.S. 9:5605 (hereinafter the "Act") which provides, in pertinent part, as follows:
A. No action for damages against any attorney at law duly admitted to practice in this state, ... whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.
B.... The one-year and three-year periods of limitation provided in Subsection A of this Section are peremptive periods within the meaning of Civil Code Article 3458 and, in accordance with Civil Code Article 3461, may not be renounced, interrupted, or suspended.
The recent opinion of our supreme court in Reeder v. North, 97-0239 (La.10/21/97), 701 So.2d 1291, provides primary guidance for the interpretation of the Act which was first enacted in 1990. The court in Reeder strictly applied the statutory language specifying "the date of the alleged act, omission, or neglect" as the triggering event for the running of the three-year period of limitation. Additionally, in our recent ruling in Cardneaux v. Dollar, 31,718 (La.App.2d Cir.3/31/99), 731 So.2d 928, 930, we noted that "the same statutory `date of the alleged act, omission or neglect' triggers the running of the one-year period of prescription assuming the client can immediately recognize that the act of malpractice occurs."
In this case, the first alleged act, omission, or neglect identified in Modelist's February 12, 1997 third party demand is the failure of Walker and M,T & F to state a cause of action and join an indispensable party in the Petition filed on December 17, 1992. In his amended third party demand filed on March 4, 1999, Modelist further alleges that Walker withdrew from her representation of him without taking steps reasonably practicable to protect his interests and without giving him reasonable notice. Modelist also alleged in his amended third party demand that Walker and Thornell failed to amend the Petition in March and April, 1994 to correct the defects recognized by the trial court's judgment on the exceptions. Modelist's final allegation of malpractice is that in a letter dated April 12, 1994, Thornell did not inform him of the failure to amend the Petition, misrepresented the status of the litigation and suppressed the truth with the intention of obtaining an unjust advantage.
All of the above actions or inactions of the attorneys upon which the malpractice claims rest occurred over one year prior to Modelist's initial third party demand in this case. At the trial of the exception of prescription, there was ample evidence presented that demonstrated Modelist's knowledge of (i) the challenge made against his Petition for the servitude, (ii) the adverse ruling of the trial court, (iii) the need to amend the Petition or appeal *685 and (iv) the overall results and status of the litigation between the time of the filing of the Petition in 1992 and the conclusion of this dispute at the time of the negotiated grant of a servitude in October 1995. Nevertheless, Modelist did not present a claim for the actions by his attorneys until February 1997. The communication of the attorneys with their client in this instance kept him fully informed of the difficulties they encountered with his claim for the servitude. The record fully supports the trial court's ruling any "act, omission or neglect" of Modelist's attorneys was known to him for over a year prior to the filing of these claims.
Modelist next asserts the inapplication of the peremptive limitation contained in the Act to his claims involving fraud. Subsection E of the Act provides, "The peremptive period provided in Subsection A of this Section shall not apply in cases of fraud, as defined in Civil Code Article 1953." The allegations Modelist makes of fraud, duress and overbilling (hereinafter the "Fraud and Overbilling Claims") in his Second Amended Answer and Third Party Demand/Reconventional Demand are as follows:
"16.
That in addition, the defendant, Shelton Modelist was forced to sign the promissory note which is the subject of this litigation on August 4, 1994 under the threat of going unrepresented by S. Lynn Walker and/or Mills, Timmons and Flowers.
17.
That in addition your defendants in Reconvention, S. Lynn Walker and/or Mills, Timmons and Flowers submitted to the defendant Shelton Modelist certain fraudulent charges for work not done or for work previously billed to the defendant.
18.
That all of these actions constituted fraud and subjected the defendant Shelton Modelist to damages as will be more fully shown at the trial of these proceedings."
Although fraud must be pleaded with particularity, an objection to the petition is properly addressed by an exception of vagueness. See, Fabre v. Kaiser Aluminum and Chemical Corp., 446 So.2d 476 (La.App. 4th Cir.1984). The only exception of vagueness filed by Walker and M,T & F was filed in August 1996, prior to Modelist filing his Second Amended Answer and Third Party Demand/Reconventional Demand.
From our review of these claims, we first note that the foregoing allegations were made not only against Walker, Thornell and M,T & F as third party defendants, but also against SCR as a reconventional demand and affirmative defense to SCR's claim on the promissory note. Additionally, Modelist alleges that SCR is wholly owned by M,T & F and that the assignment of the promissory note from M,T & F to SCR was designed to defeat Modelist's affirmative defenses concerning these Fraud and Overbilling Claims.
Although some details of these disputes concerning the alleged Fraud and Overbilling Claims were discussed in the trial of defendants' exception, the trial was not to determine the merits of these claims but to determine whether the peremption under the Act applies to bar the claims. We find that in accordance with Subsection E of the Act, Modelist's claims for duress or fraud in the confection and assignment of the promissory note are not subject to the peremptive limits of the Act.[1] Moreover, Modelist's allegation that *686 he was overbilled for legal services is not a claim for legal malpractice within the intendment of the Act. The Act as passed by the legislature is entitled "Actions for Legal Malpractice" and should not be read so broadly to include within its coverage a contractual claim by a client pertaining to a bill for services which were not performed by the attorney. Such billing disputes remain subject to the general prescriptive periods applicable to contractual claims. La. C.C. art. 3499.
Accordingly, we hold that Modelist's claims for legal malpractice in his third party demand against Walker, Thornell and M,T & F have prescribed; his Fraud and Overbilling Claims, as set forth in the above quoted allegations of his suit, remain viable. The trial court's ruling dismissing all claims for legal malpractice is affirmed. The trial court's dismissal of Modelist's Fraud and Overbilling Claims is reversed and the case is remanded for further proceedings. Costs of this appeal are assessed to Modelist.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
Before BROWN, WILLIAMS, CARAWAY, KOSTELKA and DREW, JJ.

ON REHEARING
PER CURIAM.
In the application for rehearing, G. Warren Thornell points out to the court that Shelton R. Modelist's claims for duress or fraud in the confection and assignment of the promissory note and overbilling were not made against Thornell. All claims against Thornell were for malpractice. The allegations of fraud, duress and overbilling contained in paragraphs 16 through 18 of Modelist's Second Amended Answer and Third Party Demand/Reconventional Demand filed in February 1997 (the "Fraud and Overbilling Claims") were not directed at Thornell who was not added as a defendant until Modelist's Amended Third Party Demand in March 1999. This 1999 pleading did not contain a general statement incorporating Modelist's prior allegations against the other defendants against Thornell. Accordingly, we hereby modify our prior opinion to affirm the trial court's dismissal of all of Modelist's claims against Thornell.
However, we do not modify our prior opinion that the trial court's dismissal of Modelist's Fraud and Overbilling Claims against S. Lynn Walker and Mills, Timmons & Flowers, P.C. is reversed and the case is remanded for further proceedings as to these defendants.
NOTES
[1] Regarding prescription applicable to duress and fraud, La. C.C. art. 2032 provides, in pertinent part, as follows:

Action for annulment of an absolutely null contract does not prescribe.
Action of annulment of a relatively null contract must be brought within five years from the time the ground for nullity either ceased, as in the case of incapacity or duress, or was discovered, as in the case of error or fraud.